UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

CHRISTOPHER DAVIS,                  )
                                    )
            Plaintiff,              )        Civil Action No. 5: 08-282-DCR
                                    )
V.                                  )
                                    )
MICHAEL J. ASTRUE,                  )        **MEMORANDUM OPINION**
Commissioner of Social Security,    )        **AND ORDER**
                                    )
            Defendant.              )

***   ***   ***   ***

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Christopher Davis ("Davis") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 9 and 14] Through this action, Davis seeks to reverse the adverse decision of an Administrative Law Judge ("ALJ") or, in the alternative, to have this matter remanded for consideration of additional evidence pursuant to sentence six of 42 U.S.C. § 405(g). [Record No. 9] The Commissioner contends that the ALJ applied the correct legal standards in evaluating Davis's case and, therefore, his decision to deny the period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") should be affirmed. [Record No. 14]

For the reasons discussed below, the Court will reverse the ALJ's decision, and remand this matter for a rehearing pursuant to sentence four of 42 U.S.C. § 405(g). However, the Court

-1-

will not remand the matter for consideration of additional evidence pursuant to sentence six of 42 U.S.C. § 405(g).

## I.      Background

Davis protectively filed applications for period of disability, DIB, and SSI on March 17, 2004, alleging an onset of disability as of December 6, 2000.[1]  His claim was denied initially and upon reconsideration.  Thereafter, Davis requested an administrative hearing before an ALJ.  On December 8, 2005, a hearing was held before the Honorable Tim Keller in Lexington, Kentucky. During the administrative hearing, the ALJ received testimony from Davis and Carroll Tarvin, a vocational expert ("VE").  [Tr., pp. 295–325]  On February 13, 2006, the ALJ issued a decision finding that "[t]he claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision."  [Tr., p. 26]  The ALJ concluded that, "the claimant is not entitled to a period disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under Sections 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Social Security Act."  [*Id.*]

At the time of the hearing, Davis was 30 years old with a high school equivalency degree and previous work experience as a cook, press operator, and moving company truck driver. Davis alleges disability beginning on December 6, 2000 due to a fall at work in which his back hit a concrete floor.  A MRI conduct shortly after the accident revealed that he also suffered from

---

[1]      The March 17, 2004 protective application was Davis' second set of applications for disability benefits.  He previously filed applications on January 3, 2003.  These applications were denied April 24, 2003.  No appeal was taken from this decision, and it is now final and binding.  [Tr., p. 18]

spondylolisthesis.[2]  [Tr., p. 152]  In the five-plus years between the accident and the hearing, Davis was examined by a number of doctors.  Generally, their reports agree that his lower back pain is the result of the combined effects of the injury, and the spondylolisthesis, a condition which likely lay dormant until the injury.  However, the medical assessments are inconsistent regarding Davis' residual functional capacity ("RFC").  [Tr., pp. 152–267]

After reviewing the medical evidence of record and the testimony presented during the administrative hearing, the ALJ found that Davis suffers from severe impairments, but that these impairments did not meet or medically equal one of the listed impairments.  [Tr., p. 25]  *See* 20 C.F.R. Part 404 Appendix 1 (Listing of Impairments); 20 C.F.R. §§ 404.1525 and 416.925[3] (explanation of Listing of Impairments); 20 C.F.R. §§ 404.1526 and 416.926 (explanation of "medical equivalence" of listed impairments).  The ALJ also found that Davis retained the RFC to perform medium exertional work with some limitations.[4]  *See* 20 C.F.R. §§ 404.1545 and 416.945 (explanation of residual functional capacity); 20 C.F.R. §§ 404.1567(c) and 416.967(c) (defining "medium exertional work")  [Tr., pp. 25–26]

Specifically, the ALJ found:

The claimant has the residual functional capacity to lift, carry, push, and pull 30 pounds occasionally and 20 pounds frequently, sit for 30 minutes at time, stand

---

[2]     Spondylolisthesis is the forward slippage of one vertebra relative to another, usually occurring in the lumbar region of the spine.  Developmental spondylolisthesis can be present at birth, but generally is not noticed until later in childhood or even in adult life.  Additional information can be found at the Spine Universe website: http://www.spineuniverse.com/displayarticle.php/article114.html.

[3]     DIB claims are governed by 20 C.F.R. § 404 *et seq.*, and SSI claims are governed by 20 C.F.R. § 416 *et seq.*  The language is identical or nearly the same in both sections of regulations.

[4]     The ALJ noted that "[i]f the claimant can do medium work, he can also do sedentary and light work." [Tr., p. 24]

for 30 minutes at a time and walk 30 minutes at a time.  There must be no repetitive bending and no lifting from floor to waste.

[Tr., p. 25]  At the hearing, the ALJ incorporated these limitations into a hypothetical posed to the VE.  In response, the VE testified that a person with these limitations would be unable to perform any of Davis's past relevant work.  [Tr., p. 318]  However, the VE testified that there are a sufficient number of jobs at the state and national levels that would be suitable for a person with the limitations described above.  [Tr., p. 319–323]  Based on the medical evidence in the record and the testimony of both Davis and the VE, the ALJ concluded that Davis "was not disabled as defined in the Social Security Act, at any time through the date of this decision." [Tr., p. 26]  Thus, Davis was "not entitled to a period of disability, Disability Insurance Benefits, and not eligible for Supplemental Security Income payments under Section 216(i), 223, 1602, and 1614(a)(3)(A) respectively, of the Social Security Act." [Tr., p. 26]

In his motion for summary judgment, Davis argues that the following errors are reasons for the Court to reverse the ALJ's decision: (1) the ALJ erred by finding Davis's testimony not credible when it was based on substantial evidence; (2) the ALJ erred by rejecting the treating physician's opinion; and (3) the ALJ's decision is not supported by substantial evidence.  In addition to these reasons for reversal, Davis contends that the matter should be remanded pursuant to sentence six of 42 U.S.C. § 405(g), because new and material evidence regarding his medical condition is now available.  [Record No. 9]

Conversely, the Commissioner contends that "a review of the medical evidence and the hearing decision demonstrates that the ALJ applied the correct legal standard in evaluating the Plaintiff's case.  Plaintiff is thus not entitled to DIB or SSI."  In addition, the Commissioner

-4-

argues that the new evidence is not material and, therefore, Davis is not entitled to remand on this issue.  [Record No. 14]

## II.      Standard of Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Barnhart v. Thomas*, 540 U.S. 20, 23 (2003) (quoting 42 U.S.C. § 1382c(a)(3)(B)).  This definition is qualified, however, as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that *he is not only unable to do his previous work but cannot*, considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists in the national economy.*

*Id.* (emphasis from *Thomas* included).

A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'"  *See* 20 C.F.R. §§ 404.1520 and 416.920; *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006).  If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step.  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).  However, if a dispositive finding is made at any point in the five-step process, the review terminates.  *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, a claimant must show that he suffers from a severe impairment.  20 C.F.R. §§

-5-

404.1520(c) and 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment that is expected to last for at least twelve months, which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's RFC and relevant past work to determine if he can do past work. If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

Under the fifth step of this analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education and past work experience to determine if he can perform other work which exists in the national economy.[5] 20 C.F.R. §§ 404.1520(e) and 416.920(e). If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the

---

3.      "'[W]ork which exists in the national economy' is defined to mean 'work which exists in significant numbers either in the regions where such individual lives or in several regions of the country.'" *Thomas*, 540 U.S. at 23–24.

correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006).

Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). While significant deference is accorded to the ALJ, the standard employed in these cases does not permit a selective reading of the record. Instead, "substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must be taken into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin,* 475 F.3d at 730; *Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, if the Commissioner's findings are supported by substantial evidence in the record, then those findings are conclusive. 42 U.S.C. § 405(g).

## III.     Analysis

### A.      ALJ's Did Not Err in Finding Davis Not Entirely Credible.

Determinations of credibility rest with the ALJ, but those determinations must be reasonable and supported by substantial evidence.  *Rogers*, 486 F.3d at 249.  In evaluating a claimant's credibility, the Sixth Circuit has recognized that the reviewing court should be "particularly reluctant" to substitute its judgment for that of the ALJ, because the ALJ has "seen the claimant in the flesh" and has had the opportunity to observe his demeanor.  *Gooch v. Sec'y of Health & Human Servs.*, 833, F.2d 589, 592 (6th Cir. 1987).  Thus, deference should be given to an ALJ's credibility assessments, and these assessments should be upheld "unless they are inherently incredible or patently unreasonable."  *Bobo v. United States Dep't of Agric.*, 52 F.3d 1406, 1416 (6th Cir. 1995) (internal quotations and citations omitted).  *See also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008) (noting that it is not the reviewing court's role to decide questions of credibility).

In his decision, the ALJ granted "little probative weight" to Davis's subjective allegations about his physical limitations.  The ALJ based his conclusion on the medical evidence in the record and Davis' testimony, which he found to be "less than acceptable."  [Tr., p. 23]  In support of this conclusion, the ALJ noted that although Davis testified that he is unable to lift more than his shoes or shampoo, emergency room records indicate that on March 9, 2004, Davis was admitted for lower abdominal pain after "helping a family member to move furniture."  [Tr., pp. 23, 216]  When the ALJ questioned Davis about this event during the hearing, he testified

that he didn't recall that incident.  [Tr., pp. 308–09]  In addition, the ALJ noted that on

questionnaires filled out in 2004 and 2005 Davis indicated that:

> he could walk 100 to 150 yards.  He cooks. He washes dishes with no report that
> he could not stand to do so.  He shops occasionally and paces himself with rest
> periods.  He drives three to four times a week.  He watches television.  He naps
> occasionally during the day.  He attends church and he visits relatives.

[Tr., pp. 23, 121–28, 146–51]  The ALJ also noted that these daily living capabilities are

supported by Dr. Gilbert, who "noted stabilized activities of daily living" in August 2005.  [*Id.*]

In summary, the record supports the ALJ's conclusion that Davis's "allegations regarding

his limitations are not totally credible."  [Tr, p. 25]  In addition, the Court concludes that this

credibility assessment was not "inherently incredible or patently unreasonable."  *See Bobo*, 52

F.3d at 1416.  Accordingly, the ALJ did not err in finding that Davis' testimony was not entirely

credible.

### B.    The ALJ's Decision is Not Supported by Substantial Evidence.

The decisions concerning whether the ALJ erred by rejecting the treating physician's

opinion and whether the ALJ's decision is supported by substantial evidence are necessarily

intertwined in this case.  In assessing Davis's RFC, the ALJ rejected the opinion of Dr.  John

Gilbert, Davis's treating physician, as being contrary to other medical evidence in the record.

Specifically, Dr. Gilbert's opinion regarding Davis's RFC was significantly different from the

opinion given by Dr. Emily Rayes, a consultive physician.  The ALJ gave significant weight to

Dr. Rayes' opinion, and found that Davis had an RFC to perform "a reduced range of medium."

However, the Court concludes that the ALJ erred in giving Dr. Rayes's opinion significant

weight.  Neither her opinion, nor the ALJ's assessment of Davis's RFC based on this opinion,

are supported by substantial evidence.  As a result, the Court will remand this case for a new RFC determination.

Regardless of its source, an ALJ is required to evaluate every medical opinion received into the record.  20 C.F.R. § 404.1527(d) and § 416.927(d).   When deciding the weight to give any physician's opinion, the following factors are considered: (1) whether the physician actually examined the patient; (2) whether a treatment relationship existed between the physician and patient; (3) whether the opinion is supported by, and is consistent with other medical evidence in the record; (4) whether the physician making the opinion is a specialist.  *Id.*

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse*, 502 F.3d at 540 (internal citation omitted).  However, the "opinion of a treating physician is entitled to greater weight *only* if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary.  The Commissioner may reject the opinion of a treating physician where good reasons are found to do so in the record." *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 776 (6th Cir. 2002) (emphasis added).  Good reasons to discount a treating physician's opinion can be: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 416.927(d)(2), which include, *inter alia*, the length and frequency of examinations, the amount of evidence used to support an opinion, the specialization of the physician, and consistency with the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004).  In addition, an ALJ's decision to deny benefits "must contain specific

-10-

reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 544.

Here, Davis contends that the ALJ erred by rejecting Dr. Gilbert's opinion in favor of Dr. Rayes's opinion when assessing Davis's RFC. [Record No. 9, p. 8] Dr. Gilbert, a neurosurgeon, treated Davis for back pain on a handful of sporadic occasions during 2004 and 2005.[6] [Tr., pp. 253–54, 261–64] Based on his examinations of Davis, as well as the MRI report dated 8/31/05, Dr. Gilbert gave the following opinion regarding Davis's RFC: (1) Davis can lift less than 10 lbs, and can only do so on occasion; (2) he lacks the ability to stand or walk for any length of time during an 8-hour work day; (3) his ability to sit is affected by his impairments; (4) he has no ability to climb, balance, stoop, crouch, kneel, or crawl at all during an 8-hour work day; (5) his ability to reach, handle, push, and pull are all affected by his impairments; and (6) Davis's impairments require occupational restrictions regarding heights, moving machinery, temperature extremes, chemicals, dust, fumes, humidity, and vibrations. [Tr., pp. 265–267]

Although medical opinions are considered when evaluating a claimant's RFC, the ultimate determination of a particular claimant's RFC is reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2). In this case, the ALJ found that Davis could perform a "reduced range of medium work," and that he had the following RFC:

---

[6]     At the hearing, Davis testified that the reason for the large gaps between treatments was that he was taking care of his wife who had undergone several surgeries. [Tr., p. 302]

> The clamant has the residual functional capacity to lift, carry, push and pull 30 pounds occasionally and 20 pounds frequently, sit for 30 minutes at a time, stand for 30 minutes at a time and walk 30 minutes at a time. There must be no repetitive bending and no lifting floor to waist.

[Tr., pp. 25–26]

In reaching this RFC finding, the ALJ specifically rejected Dr. Gilbert's opinion regarding Davis's RFC. The ALJ explained his reasoning as follows:

> [T]he Administrative Law Judge does not accept the extremely limited assessment of Dr. Gilbert. In the worker's compensation record, the claimant related that his problem has not changed since 2001. Dr. Gilbert's residual functional capacity of complete inability to stand and walk in not reflected in the record or in the claimant's actual testimony and raises the issue of objectivity of Dr. Gilbert as his assessment appears to be an accommodation in an attempt to help the claimant obtain disability benefits. While the Administrative Law Judge has considered the conclusions of Gilbert, greater weight is accorded to the objective medical findings that show capacity to work. Magnetic resonance imaging showed spondylolisthesis at L5/S1, facet arthropathy with relative neuroforaminal encroachment after the work-related injury in December 2000 and most recent magnetic resonance imaging of August 3[1], 2005 obtained by Dr. Gilbert is unchanged. His examination of June 2004 found intact cranial nerves, sensation intact and deep tendon reflexes of upper and lower extremities intact. He found no muscular spasms with positive straight leg raises on the right and negative on the left, negative Spurling's test and normal reflexes. He noted stabilization activities of daily living in August 2005. Indeed, the claimant said by report of July 20, 2005 that he can walk 100 to 150 yards. He cooks. He washes dishes with no report he could not stand to do so. He shops occasionally and paces himself with rest periods. He drives three to four times a week. He watches television. He naps occasionally during the day. He attends church and he visits relatives.

[Tr., p. 22–23]

In support of the ALJ's assertion that "in the worker's compensation record, the claimant related that his problem has not changed since 2001," the Court presumes — because the ALJ

-12-

does not specify — that the ALJ is referring to two *Pain and Daily Activity Questionnaires* filled out by Davis on February 2, 2003 and April 11, 2004.  In these questionnaires, Davis indicates that his pain has not "changed in nature and/or location since it began."  [Tr., p. 107, 129]  This is also supported by Davis's testimony that his back condition has remained unchanged since 2001.  [Tr., p. 303–04]  However, the Court notes that the medical record contains two contradictory assessments, which are not mentioned in the ALJ's decision.  On May 4, 2004, Dr. Devang Shah noted that "[h]is back pain is worse since last one year [sic]."  Similarly, Dr. Gilbert's August 31, 2005 MRI report notes "worsening symptoms."  [Tr., pp. 184, 253]

In addition, the ALJ found that, "Dr. Gilbert's residual functional capacity of complete inability to stand and walk is not reflected in the record or in the claimant's actual testimony."  Thus, the ALJ gave "greater weight" to the "objective medical findings that show capacity to work."   Specifically,  the  ALJ  noted  that,  "[m]agnetic  resonance  imaging  showed spondylolisthesis at L5/S1, facet arthropathy with relative neuroforaminal encroachment after the work-related injury in December 2000 and most recent magnetic resonance imaging of August 3[1], 2005 obtained by Dr. Gilbert is unchanged."  [Tr., pp. 22-23]  However, a review of the four MRI reports in the medical record shows that this statement is incorrect.[7]

Although  all  four  MRI  reports  consistently  indicate  spondylolisthesis  at  L5/S1, neuroforaminal encroachment was not noted on the December 19, 2000 MRI, and facet arthropathy was not noted until the August 31, 2005 MRI. Notes on the assessment form filled-

---

[7]     December 19, 2000 – Dr. Michael Pitman [Tr., p. 152]; February 21, 2001 – Dr. Douglas Crutcher [Tr., p. 166]; June 25, 2004 – Dr. Timothy Dineen, Dr. William Lester [Tr., p. 238]; August 31, 2005 – Dr. John Gilbert [Tr., p. 253]

out by Dr. Gilbert indicate that his opinion is based on the MRI conducted on August 31, 2005, as well as the June 9, 2004, August 10, 2005, and August 31, 2005 physical examinations. [Tr., p. 265–67] No other medical opinions were given after May 4, 2004, so Dr. Gilbert's opinion was the only one based on this most recent information. Despite this fact, the ALJ rejected this opinion, because Dr. Gilbert's "extremely limited assessment" was contradicted by Davis's own self-assessments and testimony regarding his daily functioning. [Tr., p. 22–23]

As discussed above, the ALJ rejected Dr. Gilbert's opinion regarding Davis's RFC. However, the ALJ did afford "significant weight" to Dr. Rayes's opinion, which was given nearly four years *before* Dr. Gilbert gave his opinion. Dr. Rayes examined Davis in connection with his worker's compensation claim exactly one year after the date of the accident. In forming her opinion regarding Davis's RFC, Dr. Rayes relied on her own physical examination, and she also reviewed Dr. Howard Markowitz's notes from 12/21/00, 1/11/01, 2/1/01, and 2/27/01, the official reports of the lumbar CT dated 12/19/00, and the official reports of the lumbar MRI dated 2/21/01. [Tr., pp. 176–77] Then, using the AMA's Guides to the Evaluation of Permanent Impairment (5th ed.), Dr. Rayes concluded that Davis has a permanent whole body impairment of 21%. [Tr, p. 178] Based on her conclusions, Dr. Rayes opined that Davis's RFC is as follows: (1) no lifting greater than 30 pounds occasionally; (2) no repetitive lifting greater than 20 pounds; (3) no repetitive bending; (4) no lifting from floor to waist; and (5) no walking, standing or sitting longer than 30 minutes without a break. [Tr., p. 179] In deciding to afford this RFC opinion "significant weight," the ALJ explained:

> [T]he Administrative Law Judge gives significant weight to the residual functional capacity assessment of Emily Rayes, MD, dated December 6, 2001.

-14-

> Dr. Rayes examined the claimant in connection with a worker's compensation claim.  After history of the injury and past medical history, complaints and physical examination Dr. Rayes found that the claimant had chronic low back pain consistent with L5/S1 disc herniation with compromise of the right S1 never root demonstrated on X-rays, CT scans and magnetic resonance imaging. . . .  The claimant received Vicodin in December 2003 for back pain after he helped a family member move furniture.  In March 2004 he had full range of motion in all joints.   The assessment and opinion of Dr. Rayes is not contradicted by other reports and the claimant testified that his condition has not changed since 2001.

[Tr., p. 22]

Davis argues that the ALJ erred by giving significant weight to this RFC opinion, because (1) Dr. Rayes did not personally review the test results, only their reports, and (2) Dr. Rayes did not see the 2003 or 2005 MRI results, and thus, she could not have reasonable knowledge or understanding about the Davis's current condition.  [Record No. 9, pp. 7–8]  The Court agrees with Davis that the ALJ erred by giving significant weight to Dr. Rayes's opinion.  The rationale behind this determination is that (1) Dr. Rayes fairs poorly under the standards of 20 C.F.R. §§ 404.1527(d) and 416.927(d), and (2) Dr. Rayes's opinion is not supported by substantial evidence in the record.

When the treating physician's opinion is not afforded controlling weight — as is the case here — the ALJ must consider a several factors when deciding the weight to give any medical opinion.  20 C.F.R. §§ 404.1527(d) and 416.927(d).   These factors include: (1) whether doctor examined the claimant; (2) whether the doctor treated the claimant; (3) the length of the treatment relationship and the frequency of examination; (4) the nature and extent of the treatment relationship; (5) the supportability of the opinion; (6) the opinion's consistency with

-15-

the record as a whole; (7) whether the opinion is given by a specialist in that particular area; and (8) any additional factors brought to the Court's attention.

Dr. Rayes examined Davis on two occasions (March 29, 2001 and December 6, 2001), and she never served as his treating physician. Rather, Dr. Rayes is a physician with the Department of Worker's Claims who examined Davis in connection with his worker's compensation claim. Even if a treating physician's opinion is not given *controlling* weight, opinions from treating physicians are entitled to greater weight than those of consultive physicians. *See Wilson*, 378 F.3d at 544. This is because treating sources are more "likely to be the medical professionals most able to provide a detail longitudinal picture of the claimants and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations." *Id. citing* 20 C.F.R. § 404.1527(d). *See also* 20 C.F.R. § 416.927(d). Yet, in this case, the ALJ chose to give greater weight to Dr. Rayes's opinion, which is neither strongly supported nor consistent with the record as a whole.

As noted above, one of the factors considered for determining the weight to give a physicians opinion is how well the opinion is supported. 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3). In this case, the Court finds that Dr. Rayes's opinion is not strongly supported, because she does not explain why her opinion is markedly different from that of Dr. Markowitz, a treating physician, whose notes she reviewed as part of her evaluation of Davis. In his notes from Davis's January 11, 2001 examination, Dr. Markowitz notes that Davis should be restricted to sedentary work with no prolonged standing on cement. [Tr., pp. 170–72] During the next

examination on February 1, 2001, Dr. Markowitz took Davis off of work and noted that he was experiencing "exquisite discomfort." In addition, he notes that Davis, "because he can no longer tolerate his present level of discomfort and does not want to be involved in a sedentary lifestyle for the rest of his life, wishes surgical intervention to be performed." [Tr., pp. 167–68] Finally, on February 27, 2001, after reviewing the results of the February 21, 2001 MRI, Dr. Markowitz again discussed the benefits of surgical intervention in order to resolve some of Davis's discomfort. [Tr., p. 165– 66]

In her written evaluation, Dr. Rayes references these notes from Dr. Markowitz and adds that Davis decided to forego surgery because of the potential risks with no guaranteed benefit. [Tr., pp. 175–76] Her evaluation also notes that:

> In today's visit, Mr. Davis states that the low back pain remains essentially unchanged. He does have some improvement in that it is no longer constant, but, is now intermittent on a daily basis. When it occurs, it is a dull ache with occasional sharp pain. He remains worse with walking longer than 20 minutes and with sitting greater than 30 minutes or driving greater than 30 minutes. He has not had any right leg pain recently. He does have intermittent numbness tingling of his feet bilaterally which occurs on a daily basis. The low back pain, when it occurs ranges from 6 to 8/10 in intensity. He does not report any weakness. He continues to use a TENS unit which helps with temporary relief.

[Tr., p. 176] Although the pain reports were provided by Davis, Dr. Rayes indicates that she found him to be a "reliable historian." [*Id.*] Despite reviewing Dr. Markowitz's notes (in which he opined that Davis could only perform sedentary work, and later took him off work all together), Dr. Rayes' opinion regarding Davis' RFC is much closer to the ALJ's determination that Davis had the RFC to perform "reduced medium work." No explanation is given for why Dr. Rayes believes that Davis has a substantially greater RFC than Dr. Markowitz believed he

-17-

had despite the fact that Davis indicates that his pain remains the same and the fact that he did not go through with the recommended surgery.

Finally, Dr. Rayes' opinion is not consistent with the record as a whole. It appears that Dr. Rayes RFC opinion is based primarily on her evaluation using both the "Range of Motion and the DRE methods" described in the AMA Guides to the Evaluation of Permanent Impairment (5th ed.). [Tr., p. 178] Based on these methods of evaluation, Dr. Rayes concluded that Davis's whole body impairment is 21%. As noted on Davis' worker's compensation settlement form, this was the fourth whole body impairment evaluation of Davis done during 2001. [Tr., p. 76] Davis was giving an impairment rating of 7% on April 23, 2001 by Dr. Kriss, a rating of 25% by Dr. Markowitz less than a month later on May 3, 2001, a rating of 5% on Dr. Gleis on November 15, 2001, and finally Dr. Rayes' 21% rating a few weeks later. [*Id.*] While *none* of these ratings appear to be very consistent, the Court notes that Dr. Rayes's rating is most consistent with Dr. Markowitz's rating. This leads the Court to question why Dr. Rayes's RFC opinion is markedly different from that of Dr. Markowitz, and why no explanation for this difference is provided in Dr. Rayes' evaluation. Lastly, the Court has reviewed the record and has found no other RFC opinions similar to that of Dr. Rayes, except for the ultimate RFC determination made by the ALJ. Consequently, Dr. Rayes' opinion cannot be said to be consistent with the record as a whole.

In conclusion, the ALJ's finding regarding Davis' RFC is not based on substantial evidence. Therefore, the ALJ's decision will be reversed and this matter will be remanded pursuant to sentence four of 42 U.S.C. § 405(g). *Id.* ("The court shall have power to enter, upon

-18-

the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006) (noting that a district court may order a "sentence four" remand if the court determines that a rehearing before the Commissioner is warranted in light of the court's ruling).

### C.     Claim for Remand to Consider Additional Evidence

In addition to the issues discussed above, Davis also contends that this matter should be remanded for consideration of new and material evidence which was not in existence at the time of the hearing. [Record No. 9, pp. 4–6] Davis asserts that this new evidence reveals "that the extent and nature of the Claimant's condition was much more severe then originally known to his early treating physicians and the Administrative Law Judge would have viewed the extent of the Plaintiff's claims of pain had this evidence been available to him." [*Id.*, p. 6] Based on this new evidence, Davis was found to be disabled beginning on August 1, 2007. [Tr., p. 10]

In response, the Commissioner first asserts that Davis' argument is without merit because the Appeals Council received and considered the evidence in their review of the ALJ's decision.[8] [Record No. 14, p. 5] This is confirmed by the *Notice of Appeals Council Action* which states:

> The Appeals Council has considered the fact that since the date of the Administrative Law Judge's decision, you were found to be under a disability beginning on August 1, 2007, based on an application you filed on October 31, 2007; however, the Council finds that this information does not warrant a change in the Administrative Law Judge's decision.

---

[8]     The Appeals Council inadvertently omitted the new evidence from the original record, but this omission has been corrected.

[Tr., p. 10]  Based on the fact that this evidence has already been considered and rejected, the Commissioner contends that Davis cannot meet his burden for remand because, Davis "has shown no 'reasonable probability' exists that the ALJ would have decided this case differently had he considered these records."  [Record No. 14, p. 7]

Sentence six of 42 U.S.C. § 405(g) provides in relevant part that "[the court] may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . ."  *Id.*   The party seeking a sentence six remand bears the burden of showing that the evidence is both "new" and "material," and that there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding."  *Hollon*, 447 F.3d at 483.  In addition, the Court notes that just because a matter is remanded for another reason does not mean that the additional evidence can be considered unless the specific requirements of sentence six are met.  *Id.* at 485 ("The fact that ***another*** party – the Commissioner – has met the prerequisite for a ***different*** sort of remand – under the first portion of sentence six – does not overcome the statutory command of both "good cause" and "new and material evidence" as required grounds for a sentence six remand for the consideration of additional evidence.") (emphasis original).

The evidence that Davis seeks to admit meets the definition of "new," because it was not in existence at the time of the administrative proceeding.  *Id. citing Foster v. Halter*, 279 F.3dd 348, 375 (6th Cir. 2001).  In addition, Davis meets the "good cause" prong, because the medical

-20-

evaluations he seeks to admit were conducted after the administrative proceeding. However, the Appeals Council has already determined that this new evidence is not "material," because, in its opinion, it determined that the evidence would not change the ALJ's opinion. [Tr., p. 10] The Court agrees.

The medical evidence Davis seeks to have considered on remand involves issues of mental health, chest pains, and other ailments, but it is does not involve medical issues related to his back. Therefore, the undersigned finds that this new medical evidence is not material to the determination of whether Davis is under disability based on the injury to back. Accordingly, Davis's request for remand to consider additional medical evidence pursuant to sentence six of 42 U.S.C. § 405(g) will be denied.

### IV.    Conclusion

For the reasons discussed herein, it is **ORDERED** as follows:

(1)    Plaintiff Christopher Davis' motion for summary judgment [Record No. 9] is **GRANTED**, in part, and **DENIED** in part.

(2)    Defendant Commissioner Michael Astrue's motion for summary judgment [Record No. 14] is **GRANTED**, in part, and **DENIED** in part.

(3)    The decision of Administrative Law Judge Tim Keller is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this opinion pursuant to sentence four of 42 U.S.C. § 405(g).

(4)     Plaintiff Christopher Davis' request for remand for consideration of additional evidence pursuant to sentence six of 42 U.S.C. § 405(g) is **DENIED**.

This 4th day of February, 2009.

Signed By:

_Danny C. Reeves_  DCR

**United States District Judge**